# 25-1687

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

───────────────

PETERSEN ENERGIA INVERSORA, S.A.U., PETERSEN ENERGIA S.A.U.,

*Plaintiffs-Appellees*,

v.

ARGENTINE REPUBLIC,

*Defendant-Appellant.*

───────────────

On Appeal from the United States District Court for the
Southern District of New York, No. 15-cv-2739

───────────────

## OPPOSITION TO THE UNITED STATES' MOTION FOR LEAVE TO FILE AS AMICUS CURIAE

───────────────

| | |
|---|---|
| MARK C. HANSEN | PAUL D. CLEMENT |
| DEREK T. HO | *Counsel of Record* |
| ANDREW E. GOLDSMITH | C. HARKER RHODES IV |
| KELLOGG, HANSEN, TODD, | NICHOLAS A. AQUART |
| FIGEL, & FREDERICK, P.L.L.C. | CLEMENT & MURPHY, PLLC |
| 1615 M Street, N.W., Suite 400 | 706 Duke Street |
| Washington, DC 20036 | Alexandria, VA 22314 |
| | (202) 742-8900 |
| | paul.clement@clementmurphy.com |

*Counsel for Plaintiffs-Appellees*

July 21, 2025

Plaintiffs respectfully oppose the government's motion for leave to file as amicus curiae in support of Argentina's motion for a stay pending appeal. A government amicus brief in the stay context is highly unusual; indeed, that is the whole reason the government needs to file a motion and seek consent, in contrast to the merits stage where it can file without consent as a matter of right. *See* Fed. R. App. P. 29(a)(2). That difference reflects the reality that the fast pace of stay proceedings in non-government litigation leaves the government little time for full inter-agency consultation or to develop full knowledge of the relevant facts.

Unfortunately, the government's haste and unfamiliarity is on full display in the government's brief. Most of the government's brief is premised on the mistaken view that the district court authorized execution of property not within the United States, and its blithe suggestion that a stay will simply delay Plaintiffs' payment by a few months betrays a woeful misunderstanding of Argentina's tactics of delay and obstruction of any effort to satisfy the unstayed judgment against it. In fact, the adverse effects of the government's newfound position are already beginning to play out, as Argentinian newspapers and public officials have taken the government's brief as a sign that Argentina will never have to pay the judgment. *See, e.g.*, Patrick Gillespie et al., *Argentina Says It Won't Negotiate With Burford Over YPF Shares*, Bloomberg News (July 18, 2025), https://tinyurl.com/pj4p9csa; Federico Rivas Molina, *US Supports Argentina in Lawsuit Against the Nationalization of YPF*, El

Pais (July 17, 2025), https://tinyurl.com/msmuhv2f. It is hard to see how the government's foreign-policy goals are improved by encouraging foreign countries to harm investors and ignore federal-court judgments.

The government's unusual effort to weigh in at the stay stage has also prejudiced Plaintiffs. In accordance with the briefing schedule proposed by the parties and ordered by this Court, Plaintiffs filed their response to Argentina's stay motion at 10:53pm on Thursday, July 17. The government then filed its motion and proposed amicus brief at 11:08pm—fifteen minutes after Plaintiffs' filing—thereby depriving Plaintiffs of any opportunity to respond to the government's position.[1] Because it would be fundamentally unfair to consider an amicus filing from the government to which Plaintiffs have not been able to respond, Plaintiffs respectfully submit that the government's motion for leave to file an amicus brief should be denied. *See, e.g.*, *City of N.Y. v. Permanent Mission of India*, 618 F.3d 172, 179 (2d Cir. 2010) (considering out-of-time government amicus brief only after "g[iving] the parties an opportunity to respond"); *see also MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1314 (11th Cir. 2020) (considering government

---

[1] The government filed its brief after failing to respond to Plaintiffs' request for a meeting to discuss the government's position, at which Plaintiffs could have explained to the government its misunderstandings about the case (stemming in part from the government's absence from most of the long and detailed proceedings before the district court).

2

amicus brief "to which all parties were given an opportunity to respond"); *Mountain Crest SRL, LLC v. Anheuser-Busch InBev SA/NV*, 937 F.3d 1067, 1079 n.62 (7th Cir. 2019) (similar); *Roosevelt v. E.I. Du Pont de Nemours & Co.*, 958 F.2d 416, 418 n.4 (D.C. Cir. 1992) (similar).

In any event, the government's amicus brief rests on mistaken premises and adds nothing of substance. *See, e.g.*, *In re Halo Wireless, Inc.*, 684 F.3d 581, 596 (5th Cir. 2012) (striking amicus brief that failed to "add[] anything consequential" for the court's consideration). The government contends that Argentina is likely to prevail on the merits of its appeal because, the government says, the Foreign Sovereign Immunities Act ("FSIA") "did not abrogate execution immunity of foreign state property located abroad." U.S.Br.3. But as Plaintiffs have already explained, this case does not involve execution on foreign-state property located abroad; it involves the district court's authority under federal and New York law to order a judgment debtor to bring property *into* its territorial jurisdiction for execution *within* that jurisdiction. Opp.8-9; *see* D.Ct.Dkt.742 ("Op.") at 25. The government does not dispute that the district court had that authority, making its arguments about execution abroad beside the point.

The government is also wrong about the scope of execution immunity. Like Argentina, the government claims that pre-FSIA "common-law principles" make foreign-state property abroad immune from execution. U.S.Br.2. Not so. *See*

3

*Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 144 (2014) (identifying "no case holding that, before the [FSIA], a foreign state's extraterritorial assets enjoyed absolute execution immunity in United States courts"). More to the point, as the Supreme Court explained in *NML*, "even if [the government] were right about the scope of the common-law execution-immunity rule, then it would be obvious that the terms of [FSIA] execution immunity are narrower," since the statute "immunizes only foreign-state property '*in the United States*,'" not "extraterritorial assets." *Id.*

Nor can the government rely on pre-FSIA common law to expand the FSIA's "comprehensive framework for resolving any claim of sovereign immunity." *Austria v. Altmann*, 541 U.S. 677, 699 (2004); *see NML*, 537 U.S. at 141; Opp.9-10. Again, the Supreme Court has made clear that "[a]fter the enactment of the FSIA, the Act—and not the pre-existing common law—indisputably governs the determination of whether a foreign state is entitled to sovereign immunity." *Samantar v. Yousuf*, 560 U.S. 305, 313 (2010). "Thus, any sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text. Or it must fall." *NML*, 573 U.S. at 141-42. The government has no response. Indeed, the government does not mention the Supreme Court's controlling decision in *NML*—where the government made similar arguments and lost—in its brief *at all*.

The government also has no meaningful response to this Court's precedent. The government concedes that this Court held in *Peterson* that "creditors could seek

4

a turnover order directing foreign sovereign assets abroad to be brought into the United States in aid of execution." U.S.Br.3; *see Peterson v. Islamic Republic of Iran*, 876 F.3d 63, 90 (2d Cir. 2017) ("The FSIA does not by its terms provide execution immunity to a foreign sovereign's extraterritorial assets."), *vacated on other grounds sub nom. Clearstream Banking S.A. v. Peterson*, 140 S.Ct. 813 (2020). The government does not address this Court's *reasoning* in *Peterson* or explain why it finds that reasoning unpersuasive; instead, it merely notes that *Peterson* was later vacated on other grounds. U.S.Br.3-4. That is hardly a reason to disregard *Peterson*'s cogent and persuasive analysis—and regardless, as the government admits in a footnote, this Court reached the same conclusion again just last year, repeating its view that foreign-state property abroad "possesses no execution immunity." *Peterson v. Bank Markazi*, 121 F.4th 983, 993 n.3 (2d Cir. 2024); *see* U.S.Br.4 n.2. That resolves the government's only argument on the merits.[2]

The government's arguments on the other stay factors are even less convincing. The government does not respond at all to the district court's holding that any harm Argentina faces is self-inflicted in light of Argentina's deliberate refusal to comply with the district court's conditions on a stay of the judgment

---

[2] Notably, the government does not dispute that the district court correctly determined that the shares are not entitled to execution immunity under the FSIA once they are in the United States, and that the turnover order does not violate principles of international comity. *See* Op.16-23, 28-32; Opp.11-16.

5

pending appeal, which eliminates Argentina's claim of irreparable harm. *See* D.Ct.Dkt.753 ("Stay.Op.") at 2-3. Perhaps the government has missed the facts that Argentina declined to satisfy the district court's stay conditions and refused to even seek a stay from this Court of the underlying judgment. Having failed to pursue the remedy that would protect it from any and all collection efforts (though perhaps on the condition of providing some minimal protection for the Plaintiffs), Argentina is in no position to seek extraordinary equitable relief now.

The government suggests that complying with the turnover order may deprive Argentina of "the ability to reclaim [the shares] even if it prevails on appeal," U.S.Br.7., but the government filed its motion and brief without the benefit of Plaintiffs' explanation that they have no interest in depriving Argentina of a meaningful appeal, and would agree to appropriately tailored restrictions to ensure that the transfer of the shares is not irreversible in the unlikely event that Argentina prevails. *See* Opp.17, 22. And the fact that requiring Argentina to post a bond pending appeal "would require it to locate assets in the United States, which could then be subject to attachment efforts," U.S.Br.7, is not a showing of irreparable harm; it is simply the logical and necessary consequence of an unstayed money judgment. The government cites no authority for its apparent suggestion that foreign sovereigns should be entitled to an unsecured stay pending appeal as of right—because there is none. *See, e.g.*, *Doraleh Container Terminal SA v. Djibouti*, 2023 WL 12004450, at

6

\*2 (D.D.C. Apr. 24, 2023) (denying foreign sovereign an unsecured stay pending appeal, and explaining that the argument that foreign sovereigns should be presumptively entitled to an unsecured stay has been "repeatedly rejected"); *Pao Tatneft v. Ukraine*, 2021 WL 2209460, at \*3-5 (D.D.C. June 1, 2021) (denying foreign sovereign an unsecured stay pending appeal, and collecting cases showing that "with regard to foreign sovereigns, there is no hardline exception to the default rule requiring a bond to obtain a stay of execution"); *see also Palladian Partners L.P. v. Argentina* [2024] EWCA Civ. 139 (requiring Argentina to post a bond for a stay pending appeal); *cf. Nken v. Holder*, 556 U.S. 418, 433 (2009) (stay pending appeal "is dependent upon the circumstances of the particular case" and "is not a matter of right"). In circumstances, like this, where a suit can proceed to judgment against a foreign sovereign, there is no automatic stay of that judgment pending appeal. The foreign sovereign must satisfy the four-factor test like other litigants—including the United States—and here Argentina did not even try to ask this Court for a stay of the underlying judgment.

The government's failure to grapple with the reality of this litigation reaches its apex with its extraordinary assertion that an unsecured stay pending appeal "will not harm [P]laintiffs" and will precipitate only "a relatively short delay of payment." U.S.Br.7. It is beyond remarkable—and directly contrary to Supreme Court precedent—for the United States to claim that plaintiffs who hold an unstayed

money judgment will suffer no harm at all from an indefinite and unsecured delay in the enforcement of that judgment. *See Nken*, 556 U.S. at 427 (parties are "generally entitled to the prompt execution of [final] orders"). And it is nothing short of delusional to suggest that payment will be forthcoming, even without a turnover motion, and so all that is at stake is a brief delay in the inevitable payment in full. That ignores the whole pattern of this litigation and the contemporary statements of Argentina's political leadership confirming that it has no intention of voluntarily paying what Plaintiffs are due under the unstayed judgment, or even negotiating with Plaintiffs to resolve the judgment. *See, e.g.*, Gillespie et al., *supra*. Finally, the government does not even mention (let alone refute) the district court's finding that "an unsecured stay would plainly endanger Plaintiffs' rights," given that Plaintiffs "are entitled to satisfy their unstayed judgment" and given pending legislation in the Argentine Congress "purporting to prohibit satisfaction of the Turnover Order." Stay.Op.3-4.

Finally, the government does not meaningfully address the district court's finding that "the public interest considerations weigh against a stay." Stay.Op.4. The government asserts that the turnover order "implicates significant foreign policy concerns," and that the seizure of a foreign state's property can "affront" that foreign sovereign and impinge on its sovereignty. U.S.Br.7-8. But the true affront here happened more than a decade ago, when Argentina pulled a bait-and-switch on

8

American investors, breached its clear contractual obligations, and caused Plaintiffs billions of dollars of injury.

The government has previously recognized, in a brief signed by the Solicitor General and the State Department Legal Advisor, that the United States has a strong interest in "ensuring that foreign states that enter U.S. markets as commercial actors do not enjoy immunity from lawsuits regarding violations of their commercial obligations," and accordingly supported Plaintiffs' position that Argentina is not entitled to immunity from Plaintiffs' claims in the Supreme Court. Br. for U.S. 18, *Argentine Republic v. Petersen Energia Inversora S.A.U.*, No. 18-581 (U.S. filed May 21, 2019). The government, unlike Judge Preska, has been absent from this litigation for the ensuing six years. It is particularly notable that the government did not file an amicus brief in the now-fully-briefed merits appeal. Thus, there is every reason to believe that the government continues to think that Argentina has no immunity under the FSIA and there is no basis for reversing the unstayed judgment that implicates the government's interests. Exactly why the lawyers from the Southern District think it is in the diplomatic interests of the United States to have massive judgments against foreign sovereigns, but to preclude sensible measures for the victims to collect, so that those unsatisfied judgments linger as foreign-affairs irritants for years, is difficult to fathom. It is noteworthy that no one from the State Department has signed the brief. The far more sensible conclusion is that once a suit

9

is allowed to proceed under the FSIA, and the suit proceeds to judgment, it should (absent a stay of that judgment) be subject to reasonable collection efforts to ensure the plaintiffs receive the compensation that they are due, and to remove the judgment as an ongoing foreign-affairs difficulty.

For the foregoing reasons and those set forth in Plaintiffs' opposition to the stay motion, this Court should deny the United States' motion for leave to file as amicus curiae, deny the stay motion, and expedite the appeals from the judgment and the turnover order.

Respectfully submitted,

| | |
|---|---|
| MARK C. HANSEN | s/Paul D. Clement |
| DEREK T. HO | PAUL D. CLEMENT |
| ANDREW E. GOLDSMITH | *Counsel of Record* |
| KELLOGG, HANSEN, TODD, FIGEL, | C. HARKER RHODES IV |
| & FREDERICK, P.L.L.C. | NICHOLAS A. AQUART |
| 1615 M Street, N.W., Suite 400 | CLEMENT & MURPHY, PLLC |
| Washington, DC 20036 | 706 Duke Street |
| | Alexandria, VA 22314 |
| | (202) 742-8900 |
| | paul.clement@clementmurphy.com |

*Counsel for Plaintiffs-Appellees*

July 21, 2025

10

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1. This response complies with Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,333 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f), as determined by the word counting feature of Microsoft Word 2016.

2. This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

July 21, 2025

<u>s/Paul D. Clement</u>
Paul D. Clement

## CERTIFICATE OF SERVICE

I hereby certify that, on July 21, 2025, an electronic copy of the foregoing response was filed with the Clerk of Court using the ACMS system and thereby served upon all counsel appearing in this case.

s/Paul D. Clement
Paul D. Clement
