# 25-1687

# In the United States Court of Appeals for the Second Circuit

PETERSEN ENERGIA INVERSORA S.A.U., PETERSEN ENERGIA S.A.U.,
*Plaintiffs-Appellees*,

v.

ARGENTINE REPUBLIC,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Southern District of New York
(No. 1:15-cv-02739) (Hon. Loretta A. Preska)

**REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

Amanda F. Davidoff
Thomas C. White
Morgan L. Ratner
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006-5215
(202) 956-7500
davidoffa@sullcrom.com

Robert J. Giuffra, Jr.
Sergio Galvis
Adam F. Brebner
Pedro José Izquierdo
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com

*Attorneys for the Argentine Republic*

## TABLE OF CONTENTS

*Page*

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 3

I. AS THE U.S. GOVERNMENT HAS CONFIRMED, THE REPUBLIC IS LIKELY TO SUCCEED ON THE MERITS OF THIS APPEAL ............................................................................... 3

    A. Plaintiffs Cannot Brush Away the Fundamental Question About the Interaction of Federal Common Law and the FSIA ........................ 3

    B. Plaintiffs Do Not Justify the District Court's Unwarranted Extensions of FSIA Section 1610(a) ....................................................... 4

    C. Plaintiffs Offer No Meaningful Defense of the District Court's Comity Analysis ................................................................................. 6

II. THE EQUITIES FAVOR A STAY ............................................................. 7

    A. Plaintiffs Offer No Response to the Republic's Irreparable Harm ................................................................................................. 7

    B. Plaintiffs Identify No Real Harm They Will Suffer from a Stay .......... 9

    C. A Stay Is in the Public Interest ......................................................... 10

CONCLUSION ................................................................................................. 12

-ii-

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*In re 650 Fifth Ave. & Related Props.*,
　2020 WL 3000382 (S.D.N.Y. June 4, 2020) ........................................................7

*Argentina* v. *NML Cap., Ltd.*,
　573 U.S. 134 (2014) ..........................................................................................3, 6

*Citibank, N.A.* v. *Aralpa Holdings Ltd. P'ship*,
　2024 WL 664782 (S.D.N.Y. Feb. 16, 2024) .......................................................10

*Hirschfeld* v. *Bd. of Elections*,
　984 F.2d 35 (2d Cir. 1993) ...................................................................................9

*Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*,
　676 F.3d 83 (2d Cir. 2012) ...................................................................................9

*Rubin* v. *Islamic Republic of Iran*,
　830 F.3d 470 (7th Cir. 2016) ................................................................................4

*Thapa* v. *Gonzales*,
　460 F.3d 323 (2d Cir. 2006) ................................................................................4

**Statutes**

28 U.S.C. § 1610 ................................................................................................4, 5

**Other Authorities**

*Restatement (Third) of Foreign Relations Law* § 441 (1987) ...................................6

## INTRODUCTION

This is a clear case for a stay pending appeal. Plaintiffs do not dispute that (1) the district court decided a substantial legal question against the views of the U.S. Government and every other (non-vacated) court to have addressed that question, (2) an unstayed Turnover Order could not be unwound and would irreparably harm the Republic, (3) a stay would involve only a modest delay with expedited briefing, and (4) an unstayed Turnover Order would create a foreign-policy nightmare. Having no response to those dispositive points, plaintiffs claim that the equities favor them because the Republic did not agree to the district court's onerous conditions for a stay of the $16.1 billion judgment underlying the Turnover Order. That is nonsense. As applied to *this appeal*, the four stay factors overwhelmingly favor a stay.

*First*, as the U.S. Government has confirmed, the Republic is likely to prevail on the merits. In denying a stay, the district court did not dispute that the Republic satisfies this first and most critical factor. Dkt. 753 at 2. In its amicus brief, the U.S. Government reaffirmed its consistent position, across presidential administrations, that the FSIA "did not abrogate execution immunity of foreign state property located abroad." U.S. Br. 3.

*Second*, the Republic will suffer irreparable harm without a stay. Plaintiffs have stated that, if the Turnover Order takes effect, they will sell the Republic's

majority stake in Argentina's largest energy company. Those sales, and the Republic's loss of majority ownership, will be impossible to unwind. Plaintiffs cannot wave away this harm by calling it "self-inflicted" when the Republic's compliance with the district court's supposedly minimal conditions for a stay of the underlying judgment would have required it to violate its own laws.

*Third*, plaintiffs cite no meaningful harm from a stay. They point to a modest delay, which the Republic has agreed to mitigate through expedition of this appeal. And like the district court, they cite the introduction in the Argentine Congress of a non-binding, draft resolution reaffirming Argentine law barring any transfer of the Republic's YPF Shares without the Congress's super-majority approval.

*Finally*, the public interest overwhelmingly favors a stay. Plaintiffs ignore the substantial harms to third parties such as YPF, its many stakeholders, and the Argentine people. Plaintiffs also ignore the "significant ramifications for the United States' foreign relations" and potentially "reciprocal treatment of the United States and its property in the courts of other nations." U.S. Br. 2.

2

# ARGUMENT

## I. AS THE U.S. GOVERNMENT HAS CONFIRMED, THE REPUBLIC IS LIKELY TO SUCCEED ON THE MERITS OF THIS APPEAL.

### A. Plaintiffs Cannot Brush Away the Fundamental Question About the Interaction of Federal Common Law and the FSIA.

In a sleight of hand, plaintiffs assert (at 8) that "the district court did not order execution on property outside the United States," and they wrongly accuse the U.S. Government of resting on this "mistaken premise[]." Opp. to U.S. 3.[1] In fact, the district court did order the Republic to bring its YPF Shares, located in Argentina, to the United States to satisfy its $16.1 billion judgment now on appeal in this Court. Dkt. 742 at 33. The district court may have ordered execution to occur in two steps, but this Court must still decide whether execution on foreign sovereign property outside the United States is permissible.

On that question, plaintiffs say (at 9-10) that *Argentina* v. *NML Capital, Ltd.*, 573 U.S. 134 (2014), held that the FSIA abrogated longstanding federal common law recognizing the immunity of foreign-sovereign property outside the United States, in a case not even presenting the question. The U.S. Government rightly rejects plaintiffs' misreading of *NML*. U.S. Br. 3 ("[The FSIA] did not abrogate

---

[1] Plaintiffs have no basis to claim (Opp. to U.S. 2) prejudice because the U.S. Government filed its amicus brief after their stay opposition, when plaintiffs filed a 2,333-word response—nearly double the U.S. Government's brief.

3

execution immunity of foreign state property located abroad."); *see* Dkt. 679 at 3-5. The U.S. Government has repeatedly said so in filings under both the Biden and Trump Administrations. *See* U.S. Br., *Clearstream Banking S.A.* v. *Peterson*, Nos. 17-1529 & 17-1534 (U.S. Dec. 9, 2019); U.S. Br., *Levin* v. *Bank of New York Mellon*, No. 22-624 (2d Cir. Nov. 10, 2022). The Seventh Circuit has rejected plaintiffs' position. *See Rubin* v. *Islamic Republic of Iran*, 830 F.3d 470, 475 (7th Cir. 2016) (citing *NML* in holding that, to be "even potentially subject to attachment and execution," foreign sovereign property must be "within the territorial jurisdiction of the district court"). And the Supreme Court itself called for the Solicitor General's views—years after *NML*—on the "attachment of and execution against property of a foreign sovereign located outside the United States." U.S. Br. 1, *Clearstream Banking S.A.*

On this question alone, the Republic has "raised a substantial enough question to" satisfy the first stay factor. *Thapa* v. *Gonzales*, 460 F.3d 323, 336 (2d Cir. 2006).

### B. Plaintiffs Do Not Justify the District Court's Unwarranted Extensions of FSIA Section 1610(a).

The Republic's challenge to the Turnover Order's application of FSIA Section 1610(a) is also likely to succeed on any one of three grounds.

1. As to Section 1610(a)'s requirement that the property be "in the United States," plaintiffs give up the game. They say (at 11) that this requirement will be satisfied "once Argentina complies with the turnover order." Because the Republic's

4

YPF Shares are not in the United States, the district court cannot "improperly circumvent[]" that statutory requirement by ordering the Republic to bring those shares to the United States. U.S. Br. 5.

2. The Republic's YPF Shares are not "used for a commercial activity in the United States." 28 U.S.C. § 1610(a). Plaintiffs' only response (at 12) is to cite *YPF's* purported U.S. conduct. But YPF is a separate legal entity and a publicly traded company. Under Section 1610(a), the relevant commercial activity in the United States must be *the Republic's*. No FSIA or corporate-law case supports plaintiffs' theory that the purported commercial activity of a non-U.S. company in the United States can be attributed to its majority shareholder that votes its shares outside of the United States simply because of its ownership stake. *See* Mot. 14-15.

3. The Republic's YPF Shares have never been used "for the commercial activity upon which the claim is based." 28 U.S.C. § 1610(a)(2). Plaintiffs' underlying claim against the Republic, which is barred by governing Argentine law and the plain language of YPF's bylaws, is that the Republic breached a supposed obligation by not conducting a tender offer after "seiz[ing] control" of the YPF Shares. Opp. 3-4. Plaintiffs say that the Republic "used" and "continue[s] to use" its control of its YPF Shares "to breach its obligations" by preventing enforcement of the bylaws. *Id.* 13-14 (quoting Dkt. 742 at 21-22). That makes no sense. The

5

Republic's purported breach was not making a tender offer *in 2012* for the 49% of shares the Republic did *not* expropriate.

### C. Plaintiffs Offer No Meaningful Defense of the District Court's Comity Analysis.

As plaintiffs acknowledge, longstanding principles of international comity prohibit a U.S. court from requiring the Republic to violate its own law. Plaintiffs briefly echo (at 15) the district court's indefensible conclusion that the Turnover Order does not create an "unavoidable conflict" because the Republic could "obtain[] permission from the Argentine Congress, which would not require the Argentine Congress to change [any] law." But such "permission" would require the Argentine Congress to pass a new law, which by definition means the Turnover Order conflicts with current law.

Plaintiffs have no basis for claiming that comity somehow favors the Turnover Order. *First*, the U.S. Government supported the Republic's turnover opposition and supports its stay motion. *Second*, plaintiffs' complaint (at 15) that countries could "shield" property outside the United States "from execution in the United States" runs into long-settled black-letter law. *See Restatement (Third) of Foreign Relations Law* § 441 (1987); *see also NML*, 573 U.S. at 144 ("[o]ur courts generally lack authority in the first place to execute against property in other countries"). *Third*, as explained below, the Republic has not obstructed anything to "disqualify it from invoking comity." Opp. 16.

6

## II. THE EQUITIES FAVOR A STAY.

### A. Plaintiffs Offer No Response to the Republic's Irreparable Harm.

Notably, plaintiffs have nothing to say about the irreparable harm to Argentina's sovereignty from requiring the Republic to change or violate its own laws, or from losing majority ownership in its largest energy company. Mot. 18-19. Plaintiffs admittedly plan to sell the Republic's YPF Shares "to the public" if those shares are transferred to them. *See* Dkt. 587 at 19. Once the Republic's YPF Shares are sold—or even transferred to plaintiffs—"it will be impossible to put the genie back in the bottle." *In re 650 Fifth Ave. & Related Props.*, 2020 WL 3000382, at *3 (S.D.N.Y. June 4, 2020).

In response, plaintiffs say (at 16) that this Court should deny a stay of the Turnover Order because the Republic did not secure a stay of the underlying $16.1 billion judgment now on appeal in this Court. That is wrong twice over.

For starters, plaintiffs' facts are wrong. They repeat (at 1, 4) the district court's statement that the Republic failed to secure a stay by declining to post supposedly "minimal security" and to "seek expedited appellate review." Dkt. 753 at 2. But to stay the judgment, the district court required the Republic to pledge (i) "51 percent of [its] equity stake in YPF," and (ii) "approximately $4 billion in future receivables" over 30 years related to a "binational power generator dam." Dkt. 527 at 8-9. The Republic could not comply with these onerous conditions

7

without violating Argentine laws barring (i) any transfer or pledge of the Republic's YPF Shares absent approval of the Argentine Congress, and (ii) any expenditure of public funds to satisfy a non-final judgment. Dkt. 531 at 1-2.

Nor has the Republic delayed the appeal of the $16.1 billion judgment, which has been fully briefed for nearly a year. The Republic sought a single 30-day extension following its 2023 presidential election, and otherwise used only its allotted time to brief that existential appeal. Plaintiffs themselves extended briefing by filing a cross-appeal against YPF, necessitating a cross-cross-appeal.

And it is false to suggest (at 1, 5, 21) that the Republic has delayed this Court from scheduling oral argument. The Republic welcomes oral argument so it can explain why this Court should reverse the district court's unprecedented judgment—following a grant of summary judgment without even oral argument—and grossly inflated damages award. The district court ignored Argentine law in creating a U.S.-style money remedy that no Argentine (or U.S.) court has ever imposed for breach of a corporate bylaw. The court later acknowledged that its judgment turned on "issues of first impression and questions of Argentine law," Dkt. 527 at 6, which this Court will review *de novo*. As explained in the Republic's briefs and confirmed by every Argentine amici, Argentine law does not permit one shareholder to sue another for money damages over a breach of corporate bylaws, and the district court disregarded the bylaws' exclusive penalty provision and overrode Argentina's

8

comprehensive system for third-party claims arising from an expropriation. The district court also relied on a currency-conversion rule that New York abrogated decades ago.[2]

In any event, the Republic sought a stay of the Turnover Order the day after it was entered. All of plaintiffs' cases of "self-inflicted" harm bear no resemblance to this case. *See Hirschfeld* v. *Bd. of Elections*, 984 F.2d 35, 38 (2d Cir. 1993) (movant "willful[ly] disregard[ed] Rule 8" by not seeking stay from district court); *Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*, 676 F.3d 83, 102 (2d Cir. 2012) (affirming denial of stay "in light of the [movants'] plainly dilatory tactics").

### B. Plaintiffs Identify No Real Harm They Will Suffer from a Stay.

On their side of the balance, plaintiffs first complain (at 18) of "Argentina's efforts to derail . . . prompt execution." But a modest delay to allow this Court to review the unprecedented Turnover Order cannot defeat a stay, particularly when plaintiffs are being compensated through substantial post-judgment interest. *See* Mot. 20-21; U.S. Br. 7.

---

[2] Plaintiffs are wrong in suggesting (*see* Opp. to U.S. 9) that the U.S. Government supports their position on the merits. The 2019 brief plaintiffs reference (*id.*) addressed only jurisdictional immunity under the FSIA, *not forum non conveniens*, comity, or the merits of plaintiffs' claims under Argentine law, as the district court itself recognized in deciding those issues on remand. Dkts. 161, 437.

9

Plaintiffs next claim (at 18) that the Republic has failed to offer "terms that secure [their] rights." Because neither the Republic nor its YPF Shares are going anywhere—Argentine law expressly bars the transfer of the Republic's YPF Shares without two-thirds congressional approval (Mot. 20)—there is no "risk of asset dissipation" pending appeal, *Citibank, N.A.* v. *Aralpa Holdings Ltd. P'ship*, 2024 WL 664782, at *3 (S.D.N.Y. Feb. 16, 2024), much less need for unspecified "alternative security," as plaintiffs claim (at 21-22). And the non-binding draft resolution introduced in the Argentine Congress that plaintiffs cite (at 19) simply *reaffirms* existing Argentine law—two-thirds of the Congress must approve any transfer of the Republic's YPF Shares. Dkt. 746-1 at 2.

### C. A Stay Is in the Public Interest.

Plaintiffs gesture (at 19) to the general enforceability of judgments. They also warn about "the integrity of the U.S. securities markets" (*id.*) and harm to "American investors" (Opp. to U.S. 9). But the underlying judgment has nothing to do with YPF's *1993* U.S. IPO, in which plaintiffs did not participate, and plaintiffs have not brought any U.S. securities law claims. Plaintiffs' substantive claims are *all* governed solely by Argentine law. The principal plaintiffs, special-purpose vehicles created by an Argentine family, purchased virtually all of their shares directly from a Spanish company, in transactions from 2008 to 2011 in Spain and Argentina under Spanish-law agreements. *See* Dkt. 393 ¶¶ 27, 39, 41; Dkt. 27-4 ¶ 13.1. It is telling

that plaintiffs' litigation funder acquired the right to pursue their "zombie" claims for roughly €15 million, and now reportedly stands to make a 37,000% return on its investment. If anything, YPF's investors, including in the U.S. ADR markets, and commercial partners could suffer significant losses if YPF were destabilized and its debt accelerated by a change of control. *See* Mot. 3, 21.

Finally, in their rush to obtain and sell the Republic's YPF Shares before this Court can even rule on the merits of the Turnover Order, much less the underlying $16.1 billion judgment, plaintiffs ignore the overwhelming public interest in stable relations with America's allies. They breezily say that "sovereigns are [not] more entitled to a stay than other parties." Opp. 20. But an unprecedented order against a U.S. ally, directing turnover of property in its territory in violation of its own laws and the position of the U.S. Government, raises substantial concerns not present in ordinary private litigation. As the U.S. Government has advised, the Turnover Order "implicates significant foreign policy concerns for the United States" that could have "negative effects" on "U.S. foreign relations with Argentina." U.S. Br. 7-8. It could even prompt "the reciprocal treatment of the United States and its property in the courts of other nations." *Id.* 2.

11

## CONCLUSION

This Court should stay the Turnover Order pending appeal. If the Court were to deny a stay, it should extend the current administrative stay by seven days to allow the Republic to seek emergency relief in the Supreme Court.

Respectfully submitted,

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.
Sergio Galvis
Adam F. Brebner
Pedro José Izquierdo
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com

Amanda F. Davidoff
Thomas C. White
Morgan L. Ratner
SULLIVAN & CROMWELL LLP
1700 New York Avenue NW
Washington, DC 20006-5215
(202) 956-7500

*Attorneys for the Argentine Republic*

July 22, 2025

## CERTIFICATE OF COMPLIANCE

This motion complies with Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,598 words.

This motion also complies with the requirements of Federal Rule of Appellate Procedure 27(d) and 32(a) because it was prepared in 14-point font using a proportionally spaced typeface.

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

July 22, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2025, I filed the foregoing motion with the Clerk of Court for the U.S. Court of Appeals for the Second Circuit through the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Robert J. Giuffra, Jr.*
Robert J. Giuffra, Jr.

July 22, 2025