# 25-1687

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
### Docket No. 25-1687

◄•••►

Petersen Energía Inversora, S.A.U., Petersen Energía S.A.U.,

*Plaintiffs-Appellees*,

—v.—

Argentine Republic

*Defendant-Appellant*,

YPF S.A.,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF *AMICUS CURIAE* THE STATE OF ISRAEL SUPPORTING APPELLANT

Robert Reeves Anderson
ARNOLD & PORTER
 KAYE SCHOLER LLP
1144 Fifteenth Street, #3100
Denver, CO 80202

John B. Bellinger III
Peter L. Schmidt
ARNOLD & PORTER
 KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
john.bellinger@arnoldporter.com

*Counsel for Amicus Curiae The State of Israel*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ........................................................................... ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ............................... 1

INTRODUCTION ........................................................................................... 1

ARGUMENT ................................................................................................... 3

I.    The Law of State Sovereign Immunity Is Rooted in and Reflects Principles of Customary International Law ........................................................ 3

II.   Execution Against State Property Located Outside of the Forum State Is Contrary to Customary International Law Principles of State Immunity ..... 6

    A.    Under International Law, States and Their Property Are Presumptively Immune, Subject Only to Limited Exceptions ................. 7

    B.    State Immunity from Execution Against the State's Assets or Property Is Broader Than State Immunity from Suit, Including in Respect of Property Outside of the Forum State ......................................................... 9

    C.    The Customary International Law Exceptions to Sovereign Immunity from Execution on State Property Do Not Permit Execution on State Property Located Outside of the Forum State ........................................ 11

    D.    In Light of These Principles, Compelling the Transfer of a Foreign State's Property into the Forum State for Purposes of Exercising Enforcement Jurisdiction Is Incompatible with the Customary International Law of State Immunity ....................................................... 13

III.   Compelling Foreign Sovereigns to Transfer Their Property to the State of the Forum Would Create an Unpredictable Global Immunity Regime ........ 15

CONCLUSION ............................................................................................. 17

CERTIFICATE OF COMPLIANCE ......................................................... 18

CERTIFICATE OF SERVICE .................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

(DC TA) 1190/04 *Permanent Mission of the Democratic Republic of Congo v. 767 Third Avenue Association*, PM 599 (2008) (Isr.) .......... 8

PLA 7092/94, *Her Majesty the Queen in Right of Canada v. Edelson et al.*, 51 (1) PD 625 (1997) (Isr.) .......... 8, 9

**Statutes**

Foreign States Immunity Law, 5769-2008 (Isr.), https://www.coe.int/t/dlapil/cahdi/Source/state_immunities/ Israel%20Immunities%20January%202009.pdf .......... 2, 13

**Other Authorities**

David P. Stewart, *The Foreign Sovereign Immunities Act: A Guide for Judges*, Fed. Jud. Ctr. (2018) .......... 3, 7, 10

*Draft articles on Jurisdictional Immunities of States and Their Property, with Commentaries*, [1991] 11(2) Y.B. Int'l L. Comm'n, U.N. Doc A/46/10 .......... 10, 12

Hazel Fox & Philippa Webb, *The Law of State Immunity* (2013) .......... 10

*Jurisdictional Immunities of the State (Germany v. Italy: Greece Intervening)*, Judgment, 2012 I.C.J. Rep. 99 (Feb. 3) .......... 5, 10

*Report of the International Law Commission to the General Assembly on the work of its Thirty-second session*, [1980] 11(2) Y.B. Int'l L. Comm'n 147, U.N. Doc. A/35/10 .......... 4

Restatement (Fourth) of Foreign Relations Law of the United States § 432 (2018) .......... 12

U. N. Convention on Jurisdictional Immunities of States and Their Property, Dec. 2, 2004, U.N. Doc. A/59/508 .......... 5, 7, 12

## IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]

This appeal—together with the related appeals in *Bainbridge Fund Ltd. v. The Republic of Argentina* (No. 25-1686) and *Eton Park Capital Management L.P. v. Argentine Republic* (No. 25-1689)—directly implicates the scope of State sovereign immunity from execution of judgments against State assets under international law. As a sovereign State, *amicus curiae* the State of Israel ("Israel") has an interest in the correct and consistent application of the international law principles bearing on State immunity, as well as in the maintenance of a predictable global regime of State sovereign immunity.

## INTRODUCTION

State sovereign immunity is a core tenet of international law, with its foundations in the bedrock international law principle of the sovereign equality of States. Indeed, the law of State sovereign immunity is a matter of customary international law, and customary international law principles of State immunity form the backdrop against which States' domestic foreign

---

[1] The parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation of or submission of this brief. No one other than the *amicus curiae* or their counsel made a monetary contribution to the preparation or submission of this brief.

sovereign immunity laws, including Israel's own 2008 Foreign States Immunities Law ("FSIL"),[2] were adopted.

These appeals carry significant implications for the law of State immunity from enforcement of judgments and their execution against State property.[3]  Under the background customary international law principles of State immunity, as well as under Israel's FSIL, sovereign assets are treated as presumptively immune from interference by another sovereign's courts, subject only to limited exceptions.  And, crucially, barring an express waiver or consent by the State, these limited exceptions to the immunity of the State's property apply only to property located within the forum state.  An order compelling a foreign sovereign to transfer property from abroad into the forum State for purposes of execution of a judgment against the foreign sovereign—such as the orders that are the subject of these appeals—would circumvent this important customary international law limitation.

This form of extraterritorial assertion of jurisdiction against State

---

[2]  *See* Foreign States Immunity Law, 5769-2008 (Isr.), *English translation available at* https://www.coe.int/t/dlapil/cahdi/Source/state_immunities/Israel%20Immunities%20January%202009.pdf.

[3]  Israel notes that this brief does not touch on the scope of State sovereign immunity in the context of terrorism-related lawsuits and judgments, and nothing in this brief should be construed as expressing a position of Israel in this regard.

property located within that State's own borders is inconsistent with customary international law principles of State immunity. Such an anomalous exercise of jurisdiction not only would undermine the development of a consistent and predictable legal regime of State immunity, but would also carry real costs for States and their participation in the global economy. That outcome can and must be avoided.

## ARGUMENT

### I. The Law of State Sovereign Immunity Is Rooted in and Reflects Principles of Customary International Law

States have accorded each other sovereign immunity for centuries. This State practice is based in the fundamental international law principle of sovereign equality, by which one State should not, in the ordinary course, be subject to the jurisdiction of another State's legal regime.

The consistent and accepted application of State sovereign immunity by States—including through the adoption and implementation by States of domestic foreign sovereign immunities legislation—has given rise to a settled understanding of State immunity as a principle of customary international law.[4]

---

[4] *See, e.g.*, David P. Stewart, *The Foreign Sovereign Immunities Act: A Guide for Judges*, Fed. Jud. Ctr. 6 (2018) ("Today, there can be little question that sovereign immunity reflects principles of customary international law.").

The customary nature of the law of State immunity is well-established. For example, pursuant to a mandate from the United Nations General Assembly, the United Nations International Law Commission ("ILC") undertook to report on the status of the law of State immunity, and in 1980 concluded that the rule of State immunity had been "adopted as a general rule of customary international law solidly rooted in the current practice of States."[5]

The ILC's study of State immunity practice ultimately led in 2004 to the development and adoption by the UN General Assembly of the United Nations Convention on Jurisdictional Immunities of States and Their Property ("UN Jurisdictional Immunities Convention"). The Jurisdictional Immunities Convention has not entered into force, but Israel (like other States) views its text as reflecting widespread international practice in some respects, including the principles and sources of the law of State sovereign immunity from execution in respect of State property located outside of the forum State. The UN Jurisdictional Immunities Convention, in its preamble, underscores "that the jurisdictional immunities of States and their property are generally

---

[5] *Report of the International Law Commission to the General Assembly on the work of its Thirty-second session*, [1980] 11(2) Y.B. Int'l L. Comm'n 147, ¶ 26, U.N. Doc. A/35/10.

accepted as a principle of customary international law."[6]

And lastly, the customary nature of State sovereign immunity was recognized by the International Court of Justice ("ICJ") in its most substantial opinion to date on the nature and scope of State immunity, the 2012 judgment in *Jurisdictional Immunities of the State (Germany v. Italy: Greece intervening)*.[7] The ICJ cited both the ILC's work and various States' comments on the draft UN Jurisdictional Immunities Convention—as well as "the record of national legislation, judicial decisions, [and] assertions of a right to immunity"—in concluding that State immunity was a general rule of customary international law.[8] The ICJ further observed that it "considers that the rule of State immunity occupies an important place in international law and international relations. It derives from the principle of sovereign equality of States, which, as Article 2, paragraph 1, of the Charter of the United Nations makes clear, is one of the fundamental principles of the international legal order."[9]

---

[6] U. N. Convention on Jurisdictional Immunities of States and Their Property, Dec. 2, 2004, U.N. Doc. A/59/508, pmbl. (*hereinafter* "UN Jurisdictional Immunities Convention").

[7] *See, e.g.*, *Jurisdictional Immunities of the State (Germany v. Italy: Greece Intervening)*, Judgment, 2012 I.C.J. Rep. at 123, ¶ 56 (Feb. 3).

[8] *Id.*

[9] *Id.* at 123, ¶ 57.

In sum, State immunity is first and foremost a creature of international law, and it is one that has, through consistent State practice, attained the status of customary international law.

## II. Execution Against State Property Located Outside of the Forum State Is Contrary to Customary International Law Principles of State Immunity

The customary international law of State immunity does not provide for execution of judgments against sovereign assets located outside of the forum State. As elaborated on below, the law of State immunity is based on a presumptive rule that sovereigns and their assets are immune, with only limited exceptions to that immunity. Moreover, the immunity afforded to State assets from execution is even broader than that accorded to States from suit. The accepted customary international law exceptions to State immunity from execution are substantially more limited compared to the exceptions to immunity from suit, and they do not allow for the exercise of jurisdiction for execution by one State over sovereign assets located in another State. An order circumventing this restriction would be inconsistent with the international law of State immunity.

### A. Under International Law, States and Their Property Are Presumptively Immune, Subject Only to Limited Exceptions

Historically, States accorded each other "absolute" sovereign immunity, whereby States and their assets were shielded entirely from the exercise of jurisdiction by another State's courts.[10] Over the course of the twentieth century, however, State practice evolved to accommodate exceptions to such "absolute" immunity.[11] Accordingly, customary international law provides for a presumption of foreign State immunity from suit and of immunity of foreign State property from execution, while allowing for specified exceptions to that presumption,[12] primarily where the State action or assets at issue are commercial in nature.[13] It was this restrictive approach to State immunity, as practiced by States over the preceding several decades, that formed the basis of the customary law of State immunity.

---

[10] *See, e.g.*, Stewart, *The Foreign Sovereign Immunities Act: A Guide for Judges*, *supra*, at 5.

[11] *See id.*

[12] *See, e.g.*, UN Jurisdictional Immunities Convention, *supra*, Art. 5 ("A State enjoys immunity, in respect of itself and its property, from the jurisdiction of the courts of another State subject to the provisions of the present Convention.").

[13] *See, e.g.*, Stewart, *The Foreign Sovereign Immunities Act: A Guide for Judges*, *supra*, at 5.

This evolution in the customary approach to sovereign immunity has been reflected in, and in part been driven by, codification of States' sovereign immunity practice in domestic law. For example, Israel's FSIL—like the sovereign immunity laws adopted in other common-law States—constituted an effort to define and codify the general rule of State immunity, and defined exceptions to this rule, into Israel's domestic legal regime.

In Israel—as in other States that either adopted domestic laws governing foreign sovereign immunity later in time or have not yet opted to codify their approach to sovereign immunity at all—this approach to State sovereign immunity, including the exceptions to that immunity, first manifested itself through judicial practice, with domestic courts implementing principles of international law in the absence of codified domestic law to apply. In the Israeli Supreme Court's 1997 decision in *Her Majesty the Queen in Right of Canada v. Edelson*,[14] the Court noted that Israeli practice—though not yet codified—was in accordance with customary international law.[15]

---

[14] PLA 7092/94, *Her Majesty the Queen in Right of Canada v. Edelson et al.*, 51 (1) PD 625, ¶¶ 15-30 (1997) (Isr.).

[15] *See id.*; *see also* (DC TA) 1190/04 *Permanent Mission of the Democratic Republic of Congo v. 767 Third Avenue Association*, PM 599, 643 (2008) (Isr.) (noting the then-newly drafted FSIL reflected restrictive immunity, consistent with legislation in other States).

In the same judgment, the Israeli Supreme Court also called on the Ministry of Justice to codify Israel's State practice in legislation,[16] leading to the 2008 adoption of the Israeli FSIL. The FSIL, based on customary international law principles, is structured in a similar fashion to the immunity regimes of other common law States, providing for the general rule of State immunity and defining the exceptions to that rule.[17]

**B.** **State Immunity from Execution Against the State's Assets or Property Is Broader Than State Immunity from Suit, Including in Respect of Property Outside of the Forum State**

State sovereign immunity under customary international law provides for exceptions to State immunity from both (i) legal proceedings in another State's courts, and (ii) the exercise of jurisdiction by another State's courts for purposes of execution against State property and assets. It is well-established in State practice that these two aspects of State immunity are not coterminous in scope. Indeed, under customary international law, States enjoy broader

---

[16] PLA 7092/95, *Edelson*, at ¶ 35.

[17] *Id. Cf.* Memorandum of Law of the United States as Amicus Curiae in Support of the Republic of Argentina's Motion for a Stay Pending Appeal, *Bainbridge Fund Ltd. v. The Republic of Argentina*, No. 25-1686, Dkt. No. 27.1, at 2 (2d Cir. July 17, 2025) (describing structure of FSIA, and noting that "[f]oreign sovereign immunity originally 'developed as a matter of common law,' and under common-law principles, 'the property of foreign states is absolutely immune from execution,' . . . [t]he FSIA provides limited exceptions to that rule" (citations omitted)).

immunity from execution against their property and assets than against suit, due to execution's comprising a greater intrusion into the State's sovereignty.[18]

The distinction between immunity from suit and immunity from execution, and the latter's broader scope, has been reflected in the ICJ's jurisprudence on foreign State immunity[19] and in the course of the ILC's study of State immunity practice.[20]

The customary international law of State immunity thus recognizes and underscores the principle that State immunity from execution against State property is more robust than immunity from suit. A conclusion that a sovereign State is subject to jurisdiction from suit cannot and should not give

---

[18] *See, e.g.*, Stewart, *The Foreign Sovereign Immunities Act: A Guide for Judges*, *supra*, at 82 & n.253 ("The execution immunity afforded sovereign property is broader than the jurisdictional immunity afforded the sovereign itself."); Hazel Fox & Philippa Webb, *The Law of State Immunity*, 572 (2013) ("Enforcement against State property constitutes a greater interference with a State's freedom to manage its own affairs and to pursue its public purposes than does the pronouncement of a judgment or order by a national court of another State.").

[19] *Jurisdictional Immunities of the State (Germany v. Italy: Greece Intervening)*, Judgment, 2012 I.C.J. Rep. at 147, ¶ 113 (Feb. 3) ("The rules of customary international law governing immunity from enforcement . . . are distinct, and must be applied separately.").

[20] *See, e.g.*, *Draft articles on Jurisdictional Immunities of States and Their Property, with Commentaries*, [1991] 11(2) Y.B. Int'l L. Comm'n 56 cmts. 1-2, U.N. Doc A/46/10.

rise to an assumption that the property of that State is also subject to the same court's jurisdiction, particularly as to property of the State that is located outside of the forum State. These questions require distinct analyses. As noted above, States' domestic foreign sovereign immunity laws were adopted against these background customary international law principles, and they must be accounted for in interpreting and applying such laws' exceptions to State immunity from execution.

### C. The Customary International Law Exceptions to Sovereign Immunity from Execution on State Property Do Not Permit Execution on State Property Located Outside of the Forum State

Customary international law provides limited exceptions to the presumptive immunity of State property from execution. Addressing the precise scope of these exceptions is beyond the scope of this brief. However, in the absence of express consent to such exercise, the exceptions were intended to be limited to property in the forum state's territory, reflecting the narrowness of their deviations from the presumptive immunity of State property. In its comments to the draft UN Jurisdictional Immunities Convention in 1991, the ILC made clear that the exceptions to immunity were to be applied only in proceedings in the State where the property was located:

The word "State" in the expression "proceeding before a court of another State" refers to the State where the property is located, regardless of where the substantive proceeding takes place. Thus, before any measures of constraint are implemented, a proceeding to that effect should be instituted before a court of the State where the property is located.[21]

The final text of the UN Jurisdictional Immunities Convention includes an express geographical limitation for the so-called "commercial property" exception, making clear that execution against such property "is *in the territory of the State of the forum*."[22] There is thus no basis on which a forum court may reach State property simply because it is subject to the "commercial property" exception to immunity, regardless of its location. Absent express State agreement to such an extraterritorial exercise of jurisdiction—through its specific consent or allocation of the property—that exercise is impermissible under customary international law.[23]

---

[21] *Draft articles on Jurisdictional Immunities of States and Their Property, with Commentaries*, *supra*, at 57 cmt. 6.

[22] UN Jurisdictional Immunities Convention, *supra*, Art. 19(c) (emphasis added).

[23] *See, e.g.*, United States Statement of Interest, *Bainbridge Fund Ltd. v. Republic of Argentina*, No. 16 Civ. 8605 (LAP), Dkt. No. 162, at 7 ("[T]he United States recognizes that this principle [limiting execution jurisdiction to property in the forum State] reflects a widely accepted rule of customary international law."); Restatement (Fourth) of Foreign Relations Law of the United States § 432 (2018) ("Under customary international law. . . a state may not exercise jurisdiction to enforce in the territory of another state without the consent of that other state."). *Cf.* Memorandum of Law of the United States

Israel's FSIL enumerates limited exceptions to immunity from execution,[24] and it similarly limits the "commercial property" exception to property "held *in Israel* by a foreign state."[25]

### D. In Light of These Principles, Compelling the Transfer of a Foreign State's Property into the Forum State for Purposes of Exercising Enforcement Jurisdiction Is Incompatible with the Customary International Law of State Immunity

As shown above, the customary international law principles applicable to State immunity provide for only limited and defined exceptions to State immunity from execution, which are narrower even than those applicable to immunity from suit. Those exceptions, in turn, are themselves restricted further to property located in the forum State, absent the State's express waiver or consent to the contrary.

An order compelling a foreign sovereign to transfer its property located within its own territory into the forum State so that a court may exercise jurisdiction over that State property for purposes of execution amounts to a

---

as Amicus Curiae in Support of the Argentine Republic's Motion for a Stay Pending Appeal, *Petersen Energia Inversora S.A.U. v. Argentine Republic*, No. 25-1687, Dkt. No. 40.1, at 2-3 (2d Cir. July 17, 2025) ("The FSIA 'lift[ed] execution immunity [only] 'in part,' solely for property in the United States. It did not abrogate execution immunity of foreign state property located abroad." (citations omitted)).

[24] *See* Foreign States Immunity Law, 5769-2008, Art. 16 (Isr.).

[25] *Id.*, Art. 1 (emphasis added).

circumvention of this customary international law requirement. The State property subject to such an order is, in the first instance, located outside of the forum, and thus outside of the accepted exceptions to immunity. The fact that, following the transfer, the property is in the forum and potentially otherwise within the scope of the commercial property exception is irrelevant: the immunity afforded to State property from execution under customary international law has already been violated by the forum State's initial exercise of jurisdiction to compel the transfer of the State property.

\*      \*      \*

In sum, the principles of customary international law applicable to the immunity of States from execution against their property support that exceptions to that immunity should be clearly expressed, set against a backdrop that such property is, as a rule, immune from foreign jurisdiction. And those exceptions, as practiced by States and understood as custom, do not countenance extraterritorial exercises of jurisdiction for purposes of execution against State property. Such an exercise of jurisdiction is inconsistent with the customary international law of State immunity.

### III. Compelling Foreign Sovereigns to Transfer Their Property to the State of the Forum Would Create an Unpredictable Global Immunity Regime

Such a deviation from the customary international law of State immunity would be anomalous and would risk creating an inconsistent and unpredictable global immunity regime. This result should be avoided for reasons of both principle and practice.

*First*, as a matter of principle, unpredictable and *ad hoc* exercises of jurisdiction against other sovereign States carry negative consequences for the development of international law. The law of State immunity rests on consistent State practice and common applications of core international law principles, including international comity and sovereign equality. Any departure from this practice serves to undermine these tenets, weakening State sovereign immunity's core of common understanding and practice. State immunity is an important element of international law—and the peaceful relations between States it supports—and any potential erosion of its principles should be treated with caution. At a minimum, such a significant deviation from customary international law by a State would more appropriately be made through a legislative process that takes into account all relevant considerations and interests.

15

*And second*, as a matter of practice, a State immunity regime that allows for execution against State property in circumstances such as those here would carry real, substantial costs for foreign States that participate in and contribute to the global economy. Specifically, the orders under appeal here blur the settled boundary between one State's being subject to another State's legal jurisdiction and the potential exercise of execution jurisdiction against the State's property. Doing so risks injecting uncertainty into States' affairs. States, like any economic actor, have predicated and structured their participation in the economies of other sovereign States—at least in part in reliance on settled legal principles of immunity. State immunity and its predictable application allow for fulsome participation by sovereign entities in the global economy.

There is no need to risk undermining this global immunity regime and creating greater uncertainty here: clear principles of customary international law hold that State property located outside of the forum state is immune from attachment, and there is no basis on which to deviate from those principles.

## CONCLUSION

*Amicus* the State of Israel appreciates the opportunity to provide this Court its views on the proper interpretation of the customary international law of State immunity.

Dated: October 2, 2025

Respectfully submitted,

/s/ *John B. Bellinger III*

Robert Reeves Anderson
ARNOLD & PORTER
  KAYE SCHOLER LLP
1144 Fifteenth Street, #3100
Denver, CO 80202

John B. Bellinger III
Peter L. Schmidt
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
john.bellinger@arnoldporter.com

*Counsel for Amicus Curiae The State of Israel*

## CERTIFICATE OF COMPLIANCE

This document complies with Fed. R. App. P. 29(a)(5), 32(a)(7)(B), and Local Rule 29.1(c), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,452 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Expanded BT font.

Dated: October 2, 2025    */s/ John B. Bellinger III*
              John B. Bellinger III

              *Counsel for Amicus Curiae*
              *The State of Israel*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing brief was filed electronically on October 2, 2025 and will, therefore, be served electronically upon all counsel.

*/s/ John B. Bellinger III*
John B. Bellinger III

*Counsel for Amicus Curiae*
*The State of Israel*